ALLEN HERBERT,

                Plaintiff,

v.

**DECISION AND ORDER**
17-CV-248S

CATTARAUGUS COUNTY, et al.,

                Defendants.

## I.  INTRODUCTION

Plaintiff Allen Herbert brings this suit seeking damages and injunctive relief under 42 U.S.C. § 1983, for alleged deprivations of his constitutional rights. Presently before this Court are Defendants' motions to dismiss, in which they argue that this Court lacks subject matter jurisdiction under Rule 12(b)(1), and that Plaintiff has failed to state a claim under Rule 12(b)(6). For the following reasons, Defendants' motions are granted and the Complaint is dismissed.

## II.  BACKGROUND[1]

Plaintiff, who is "of African and European descent" (Compl. ¶ 20), brings this civil suit against Defendants Cattaraugus County, Michael Nenno (retired Cattaraugus County Family Court Judge), Schavon Morgan (Support Magistrate for Cattaraugus County), Steven Miller (Assistant County Attorney for Cattaraugus County), and Donna Holiday (an employee of Cattaraugus County, who is also Plaintiff's mother-in-law and the foster

---

[1] For the sake of brevity and clarity, this Court recites only those facts pertinent to the pending motions.

parent to Plaintiff's minor son). (Id. ¶¶ 5-10, 25.) Plaintiff alleges that Defendants incarcerated him and denied him access to his son due to racial animus.

Specifically, Plaintiff alleges that, although he was authorized visitation with his son by an order from the Cattaraugus County Family Court, Defendants have blocked visitation through his son's foster care placement. (Id. ¶¶ 25-26.) Plaintiff further alleges that the denial of visitation is a result of Defendants' racial animus, and that his incarceration was ordered in retaliation for his attempts to visit his son. (Id. ¶ 27.) Plaintiff does not make specific allegations of racism against any Defendant except Holiday,[2] but alleges generally that there is a history of discrimination against Americans of African descent, including separating African Americans from their children. (Id. ¶¶ 18-19.)

Although the timeline and procedural history are not clear from the Complaint, it appears that Defendant Morgan initially recommended Plaintiff be incarcerated for overdue child support payments at a hearing on June 1, 2015. (Id. ¶ 29.) Judge Ploetz of the Cattaraugus County Family Court (who is not named as a Defendant here) sentenced Plaintiff to six months incarceration on August 7, 2015, but stayed enforcement of the sentence for one year. (Id. ¶ 29.) Plaintiff alleges that, on December 10, 2015,[3] Defendants Holiday, Miller, and Cattaraugus County moved to re-open his case, seeking to impose incarceration and $50,293.84[4] in arrears. (Id. ¶ 33.) Around the same time, "the parties"—presumably Plaintiff and Holiday—also consented to a new visitation order. (Id. ¶ 32.) Following a hearing on March 22, 2016, Judge Nenno sentenced Plaintiff to

---

[2] Plaintiff alleges that Holiday referred to her own daughter—Plaintiff's estranged wife, who is also "of African and European descent"—by a racially disparaging term. (Id. ¶¶ 22-23.)
[3] The Complaint states that this took place in December 2016, but context suggests that this took place in 2015, prior to Plaintiff's initial incarceration in March 2016. (Compare Compl. ¶ 33 and ¶ 35.)
[4] Plaintiffs alleges that he owed only $320. (Id. ¶ 27.)

2

six-months incarceration, but found that the amount of unpaid child support was $320, not the larger amount allegedly demanded by Defendants. (Id. ¶ 35.) Plaintiff alleges that, although Judge Nenno signed the visitation order agreed by the parties in December 2015, that order was frustrated due to his incarceration. (Id. ¶¶ 35.) Plaintiff further alleges that Support Magistrate Morgan denied the petition to assess $50,293.84 in arrears and dismissed the petition under which he was incarcerated at the end of March 2016. (Id. ¶¶ 36-37.)

Plaintiff completed his sentence on July 22, 2016, and contacted Holiday to visit his son per the controlling Family Court visitation order. (Id. ¶ 40.) Plaintiff alleges that Defendants "determined to recommence proceedings to incarcerate" him after he attempted to contact his son and, on September 2, 2016, petitioned for Plaintiff's reincarceration for failure to pay child support during the period of his confinement. (Id. ¶¶ 41-42.) At a hearing on February 22, 2017, Defendant Miller, on behalf of defendants Cattaraugus County and Holiday, allegedly stated that Plaintiff should be incarcerated for failure to pay child support. (Id. ¶ 43.)

Finally, Plaintiff alleges that "Defendants were and are paid wages and employment benefits . . . from United States Grants to New York State to fund public assistance to those unable to support their minor children." (Id. ¶ 44.) Plaintiff contends that Defendants have refused to assist him and denied him his constitutional rights, despite their obligation to assist non-custodial parents in visiting their children under the terms of the grants. (Id. ¶¶ 45-46.)

The Complaint names five causes of action: (1) that Plaintiff's First and Fourteenth Amendment rights to associate with his son were violated through Defendants' actions

including prosecution and incarceration; (2) that his Fifth and Fourteenth Amendment rights to liberty were violated when he was incarcerated; (3) that his Fifth, Fourteenth, and Fifteenth Amendment rights to liberty were violated due to his race; (4) that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was denied liberty and access to his son; and (5), that Defendants' current prosecutions have denied him his Fifth and Fourteenth Amendment rights to be free from double jeopardy. The Complaint seeks compensatory damages, attorneys' fees, and equitable and declaratory relief against Defendants Cattaraugus County, Miller, and Holiday.

### III. DISCUSSION

Plaintiff's claims are brought under 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d. Cir. 1997) (citing Eagleston v. Guido, 41 F.3d 865, 875-76 (2d Cir. 1994)). Defendants seek dismissal of the Complaint under Rules 12(b)(1) and 12(b)(6), as well as sanctions and legal fees.

**A.**    **Subject Matter Jurisdition**

To defeat a motion to dismiss brought under Rule 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). Where subject matter jurisdiction is lacking, the suit must be dismissed. Id. "Although courts are generally limited to examining the sufficiency of the pleadings on a motion to dismiss, on

4

a challenge to a district court's subject matter jurisdiction, the court may also resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." Licci v. Lebanese Canadian Bank, SAL, 834 F.3d 201, 211 (2d Cir. 2016).

1. Rooker-Feldman

Defendants contend that the Complaint must be dismissed under the Rooker-Feldman doctrine,[5] which precludes district court review of state court judgments due to a lack of subject matter jurisdiction. Mitchell v. Fishbein, 377 F.3d 157, 165 (2d Cir. 2004); Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 83-84 (2d Cir. 2005) ("Where a federal suit follows a state suit, the former may be prohibited by the so-called Rooker-Feldman doctrine in certain circumstances."). Named for two Supreme Court cases— Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)—the doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." See Hoblock, 422 F.3d at 84. Because a federal statute, 28 U.S.C. § 1257, "vests authority to review a state court's judgment solely in th[e] [Supreme] Court," Rooker and Feldman held that district courts "lacked subject-matter jurisdiction" to hear cases seeking to "overturn an injurious state-court judgment." See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-92, 125 S. Ct. 1517, 1526, 161 L. Ed. 2d 454 (2005).

The Rooker-Feldman doctrine has four requirements: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment;

---

[5] "Because the Rooker-Feldman doctrine implicates the subject matter jurisdiction of the District Court, the doctrine's application" should be analyzed first. Fraccola v. Grow, 670 F. App'x 34, 35 n. 1 (2d Cir. 2016) (internal citation omitted).

5

(3) the plaintiff invites the federal court to review and reject that judgment; and (4) the state court judgment was rendered prior to the commencement of proceedings in the district court." Brodsky v. Carter, 673 Fed. App'x 42, 43 (2d Cir. 2016). "Under Rooker-Feldman, a district court may not review a claim that is 'inextricably intertwined' with a state court's judgment." Simpson v. Putnam Cty. Nat'l Bank of Carmel, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998) (quoting Feldman, 460 U.S. at 483 n.16); see also Dye v. Virts, No. 03-CV-6273L, 2004 WL 2202638, at *3 (W.D.N.Y. Sept. 28, 2004) ("[W]here a claim is so 'inextricably intertwined' with a state court judgment that 'federal relief can only be predicated upon a conviction that the state court was wrong' the Rooker-Feldman doctrine will defeat the court's jurisdiction over the claim." (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987)).

"[I]n determining whether the doctrine applies, the key inquiry is whether the complaint alleges an injury caused by a state court judgment." Brodsky, 673 F. App'x at 43. Here, the alleged injuries in Counts One, Two, and Four flow from orders entered in the Cattaraugus County Family Court, specifically the orders of incarceration. Although Plaintiff does not challenge the orders themselves, to address his claims and find that constitutional violations had been committed, this Court would be required to review and reject the Family Court's decision to incarcerate the Plaintiff. With respect to timing, the two orders of incarceration, which are dated August 7, 2015 and March 22, 2016, significantly precede the filing of this action on March 21, 2017. (See Compl. ¶¶ 26, 31, 33-38.)

Plaintiff argues that the Rooker-Feldman doctrine is inapplicable because "his prosecution itself is a violation of federal law." (Pl. Opp. at 7.) Plaintiff cites no precedent

6

in support of this position, and the doctrine extends to bar § 1983 claims that are framed to, or in effect do, challenge the validity of a state court judgment. Brodsky, 673 F. App'x at 43; Segreto v. Islip, No. 12-CV-1961(JS)(WDW), 2013 WL 572435 (E.D.N.Y. Feb. 12, 2013) (holding that recasting a complaint in the form of a civil rights action pursuant to § 1983 does not avoid the Rooker-Feldman bar). A federal plaintiff cannot "avoid Rooker-Feldman by clever pleading—by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself." See Hoblock, 422 F.3d 77 at 87-88. Further, "even if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding." Gonzalez v. Ocwen Home Loan Servicing, 74 F. Supp. 3d 504, 517 (D. Conn. 2015), aff'd 632 F. App'x 32 (2d Cir. 2016) (internal quotation marks omitted).

This Court finds that the requirements of the Rooker-Feldman doctrine are met as to Counts One, Two, and Four, and that Plaintiff's "clever pleading" cannot overcome that. Accordingly, because there is no subject matter jurisdiction over those claims, they must be dismissed.[6]

   2. Younger Abstention

The alleged constitutional violations in Count Five arise from ongoing Family Court proceedings and Defendants' alleged continued attempt to incarcerate Plaintiff. This

---

[6] This Court notes that Rooker-Feldman "does not bar federal adjudication of a general constitutional challenge to a state law or rule." Dubin v. Cty. of Nassau, No. 16CV4209JFBAKT, 2017 WL 4286613, at *6 (E.D.N.Y. Sept. 27, 2017) (citing Feldman, 460 U.S. at 482-85 (distinguishing "between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission" and holding that a federal district court has jurisdiction over the former claim); Feng Li v. Rabner, 643 Fed. App'x 57, 59 (2d Cir. 2016) ("As to the court's Rooker-Feldman ruling, this doctrine does not apply to Li's challenge to the constitutionality of the state court rule."). However, in Counts One, Two, and Four, the challenge is specifically aimed at how the law was applied to the Plaintiff, and not at the law itself.

Court finds that, although Count Five does not meet the Rooker-Feldman requirements because the Family Court proceedings are not yet final, this claim is nevertheless barred by the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Younger abstention "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." Torres v. Gaines, 130 F. Supp. 3d 630, 635 (D. Conn. 2015). This doctrine "applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" Id. at 636 (quoting Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588, 187 L. Ed. 2d 505 (2013)).

Several courts in this Circuit have held that Younger abstention applies in similar circumstances as this case. See id.; see also Graham v. N.Y. Ctr. for Interpersonal Dev., No. 15-CV-00459, 2015 WL 1120120, *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that the plaintiff's claims for injunctive relief were barred by Younger where the plaintiff sought to challenge ongoing family court proceedings regarding the loss of custody of her son); Moore v. Sims, 442 U.S. 415, 435, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979) (family relations are a traditional area of state concern).

Because the issues in Count Five are still pending in the Family Court, this Court abstains from exercising jurisdiction pursuant to Younger. Accordingly, Count Five is also dismissed.

### B. **Failure to State a Claim**

Defendants have also moved for dismissal under Rule 12(b)(6). On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all

8

reasonable inferences in favor of the non-moving party. <u>Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.</u>, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

Count Three of Plaintiff's Complaint alleges that Plaintiff was unconstitutionally deprived of his right to liberty based upon Defendants' racial hatred. This alleged deprivation of liberty may be construed as independent from the challenges to Family Court's orders incarcerating Plaintiff, therefore, this claim may survive <u>Rooker-Feldman</u>. <u>See</u> <u>In re Dayton</u>, 786 F. Supp. 2d 809, 817 (S.D.N.Y. 2011) (finding that claims arising from actions that were not done pursuant to the final court order survived <u>Rooker-Feldman</u>).

   1. <u>Defendant Holiday</u>

Holiday, proceeding *pro se*, has moved for dismissal of all the claims against her and for "sanctions and costs and fees associated" with her defense of the action. "It is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." <u>Green v. United States</u>, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation omitted). Here, Holiday contends that all of her interactions with Plaintiff have been on a "personal level" and that there are no allegations related to her work as an employee of the state.

9

Plaintiff alleges that he was incarcerated on the demand of defendant Holiday and that she blocked access to his son (see Compl. ¶¶ 25, 27), yet fails set forth any allegation that these actions were carried out under the color of state law or in Holiday's official capacity as an employee of the Department of Social Services Public Assistance Unit. Conclusory allegations that a defendant acted in concert with state officials do not suffice to state a § 1983 claim against a private actor. Finnan v. Ryan, 357 F. App'x 331, 333 (2d. Cir. 2009), *cert. denied*, 562 U.S. 952 (2011).

Accordingly, because Plaintiff has not alleged that Holiday was acting under color of state law, see Whalen, 126 F.3d at 405, the claims against her are dismissed.[7]

2. Defendants Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller

Defendants Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller move for dismissal on the grounds of judicial and prosecutorial immunity. "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Therefore, a judge is immune from all forms of suit unless he or she has acted either beyond the judge's judicial capacity, or "in the complete absence of all jurisdiction." Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (quoting Mireles v. Waco, 502 U.S. 9, 12, 112 S. Ct. 286, 288, 116 L. Ed. 2d 9 (1991)). In determining whether or not a judge acted in the "clear absence of all jurisdiction," the judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be

---

[7] Further, Plaintiff made no argument opposing Holiday's motion. This Court therefore deems the claims against Holiday to be abandoned. See Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases); Bonilla v. Smithfield Assoc. LLC, 09 Civ. 1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing plaintiff's claims as abandoned by failing to address them in his opposition motion to defendant's motion to dismiss all claims).

overcome when the 'judge clearly lacks jurisdiction over the subject matter.'" Ceparano v. Southampton Justice Court, 404 Fed. Appx. 537, 539 (2d Cir. 2011) (quoting Maestri v. Jutkofsky, 860 F.2d 50, 52 (2d Cir. 1998)).

"Whether a judge acted in a 'judicial capacity' depends on the 'nature of the act [complained of] itself, *i.e.*, whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" Id. (quoting Stump v. Sparkman, 435 U.S. 349, 362, 98 S. Ct. 1099, 1107, 55 L. Ed. 2d 331 (1978)). "Further, if the judge is performing in his judicial capacity, the judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Id. (quotations omitted). The doctrine of judicial immunity is applicable to actions brought pursuant to 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, 554, 87 S. Ct. 1213, 1218, 18 L. Ed. 2d 288 (1967).

Prosecutors are also immune from § 1983 actions arising from conduct that was an exercise prosecutorial functions. See, e.g., Imbler v. Patchman, 424 U.S. 409, 423, 96 S. Ct. 984, 991, 47 L. Ed. 2d 128 (1976). For such immunity to apply, the prosecutor must have been functioning as an advocate when he or she engaged in the challenged conduct, meaning that immunity attaches only as to actions within the scope of the judicial phase, and not to actions taken as an administrator or investigative officer that falls outside that scope. Warney v. Monroe County, 587 F.3d 113, 120-122 (2d. Cir. 2009) (citing Imbler, 424 U.S. at 430). Prosecutors are also immune from liability for their decision to prosecute. See Anilao v. Spota, 774 F. Supp. 2d 457, 480 (E.D.N.Y. 2011) (citing Hartman v. Moore, 547 U.S. 250, 261-62, 126 S. Ct. 1695, 164 L. Ed. 2d 441

11

(2006)). Further, "absolute immunity still applies where a prosecutor brought a case in violation of a defendant's constitutional rights but was otherwise acting within his role as an advocate." Id. at 488.

Here, Plaintiff's claims against Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller arise solely from their conduct within their judicial and prosecutorial roles. Plaintiff alleges injuries arising from the Findings and Fact and Orders by Judge Nenno and Support Magistrate Morgan, as well as from the prosecutorial actions taken by Assistant County Attorney Miller. Plaintiff's argument that Support Magistrate Morgan is not eligible for judicial immunity is without merit. See Parent v. New York, 786 F. Supp. 2d 516, 533-34 (S.D.N.Y. 2011) (dismissing claims brought against both a judge and Support Magistrate as both parties had judicial immunity). His contentions of wrongdoing are also insufficient to defeat the motions to dismiss, as judicial immunity protects judges and prosecutors even from claims of malfeasance as long as they are acting within their jurisdiction. See Teichmann v. New York, 769 F.3d 821, 826 (2d Cir. 2014) (holding that the Plaintiff failed to state a claim to relief because the judge and district attorney whom Plaintiff asserted violated his constitutional rights were entitled to absolute immunity).

Accordingly, the claims against defendants Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller are dismissed.

3. Defendant Cattaraugus County

Finally, Defendant Cattaraugus County moves for dismissal pursuant to Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Under the standards set forth in Monell, a municipality can be held liable

under § 1983 if a plaintiff can plead and prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); see also Connick v. Thompson, 563 U.S. 51, 60-61 (2011). Monell does not provide an independent separate cause of action against a municipality; rather, "it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006). A municipality can be held liable for actions taken pursuant to its policies, pursuant to custom, or for "practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61. "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d. Cir. 2012) (citing Monell, 436 U.S. at 691)).

To successfully state a claim for municipal liability under Monell, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Barnes v. Cty. of Monroe, 85 F. Supp. 3d 696, 718 (W.D.N.Y. 2015). Here, the only policy or custom identified by Plaintiff is a passing reference to the state of New York and Cattaraugus County's receipt of funding under 42 U.S.C. § 607 (Grants to States with Child Welfare Services ("GSGC")), and an allegation that Defendants have failed to assist him as a non-custodial parent, despite their obligations to do so under the GSGC.[8] (Compl. ¶¶ 44-46.) Plaintiff therefore fails to make factual allegations that his

---

[8] Plaintiff presents additional theories and allegations in his Opposition to the Motions to dismiss. However, these new allegations cannot be considered because "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).

13

constitutional rights were violated pursuant to an official course of action in the form of a policy or custom, or even that Cattaraugus County maintains a policy or custom based upon receipt of GSCS funds. See Finnan, 357 F. App'x at 333 (finding that plaintiff failed to allege a governmental custom or policy sufficient to make the defendant County liable, therefore, the claims against the County were properly dismissed for failing to state a claim). Further, Plaintiff fails to put forth facts sufficient to create a plausible inference that Cattaraugus County's receipt of GSCS funding defendant did, or would, create a policy or custom that could injure Plaintiff and deny him his constitutional rights. See Montalvo v. Lamy, 139 F. Supp. 3d 597, 609 (W.D.N.Y. 2015) (finding the policy identified by Plaintiff did not violate a constitutional right and, therefore, held that Plaintiff's Monell claim must be dismissed for failure to allege an underlying constitutional violation).

Accordingly, because the allegations in the Complaint are not sufficient to state a claim under Monell, the claim against Cattaraugus County must be dismissed.

**C.     Defendants' Requests for Fees**

Defendants Holiday, Judge Nenno, and Support Magistrate Morgan have requested attorneys' fees under 42 U.S.C. § 1988(b); Holiday also requests sanctions. Section 1988 states that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." When the prevailing party is the defendant, as here, attorneys' fees may be recovered if the underlying action was "frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." Davidson v. Keenan, 740 F.2d 129, 132 (2d Cir. 1984) (quotation omitted). The Second Circuit has found denial of fees appropriate where a "plaintiff[ ] had some foundation, albeit a weak one, to bring [the]

14

claim." Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 229 (2d Cir. 2004). Here, although this Court has found no jurisdiction or merit in these causes of action, it finds that they are not entirely frivolous or unreasonable.

Moreover, the request is premature and fails to comply with the relevant rules. See Bartels v. Inc. Vill. of Lloyd Harbor, No. 10 CV 5076 PKC, 2015 WL 4459403, at *1 (E.D.N.Y. July 21, 2015) (denying award of fees because, *inter alia*, prevailing defendant had failed to comply with Fed. R. Civ. P. 54(d)(2)(B)). Accordingly, this Court exercises its discretion to deny Defendants' requests for fees and sanctions.

## IV. CONCLUSION

For the reasons stated above, Defendants' motions are granted and the Complaint is dismissed. Counts One, Two, and Four are dismissed for lack of subject-matter jurisdiction under Rooker-Feldman. Count Five is dismissed under the Younger abstention doctrine. Count Three is dismissed for failure to state a claim. To the extent that Defendants seek other remedies, including sanctions and attorneys' fees, their motions are denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants Schavon Morgan and Michael Nenno's motion to dismiss (Docket No. 7) is GRANTED;

FURTHER, that Defendants Cattaraugus County and Steven Miller's motion to dismiss (Docket No. 8) is GRANTED;

FURTHER, Donna Holiday's motion to dismiss (Docket No. 10) is GRANTED;

FURTHER, that all requests for fees or sanctions are DENIED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: November 13, 2017
Buffalo, New York

                                        <u>/s/William M .Skretny</u>
                                        WILLIAM M. SKRETNY
                                   United States District Judge